**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO.  06-061 (RCL)** |
| | : | |
| | : | **STATUS: May 19, 2006** |
| **CURTIS WILSON,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, hereby responds to Defendant's Motion to Suppress Evidence and Incorporated

Memorandum of Law (Motion to Suppress).[1]  In support of this opposition, the United States would

show the following:

**FACTUAL BACKGROUND**

1.  The defendant, Curtis Wilson, is charged with Unlawful Maintenance of Premises to

Manufacture, Distribute, Store and Use a Controlled Substance in violation of 21 U.S.C. § 856(a)(2)

and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime

Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1).

2.  There are three co-defendants who were indicted along with the defendant.  Jerome

Kinard is charged with Unlawful Distribution of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1)

---

[1]  On or about April 25, 2006, Defendant Jerome Kinard's Motion for Leave to Join and
Adopt Codefendant Wilson's Motion to Suppress Evidence and Incorporated Memorandum of
Law was filed.  For the sake of brevity, this opposition will refer to a single motion to suppress.
However, the United States incorporates this opposition by reference.

and 841(b)(1)(c)  Travis Sweet, was indicted on the charges of Unlawful Distribution of Cocaine

Base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Unlawful Possession With the

Intent to Distribute 5 Grams or More of Cocaine Base and aiding and abetting in violation of 21

U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2.  Alonzo Patrick was charged with

Unlawful Possession With the Intent to Distribute 5 Grams or More of Cocaine Base and aiding and

abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2.  The

indictment arose out of incidents that occurred on January 18, 2006 and January 24, 2006.

3.  On January 18, 2006, an undercover officer with the Metropolitan Police Department,

King Watts, went to Apartment #101 at 3650 Minnesota Avenue, S.E., Washington, D.C.  After the

undercover officer knocked on the door, it was answered by a black male – that was subsequently

identified on January 24, 2006 as Jerome Kinard.  Mr. Kinard  then asked what did the undercover

officer want.  The undercover officer responded "twenty" and gave $20 in Metropolitan Police

Department pre-recorded funds to Mr. Kinard in exchange for two ziplocks of a rocklike substance

that later field-tested positive for cocaine.  Mr. Kinard stated that he also had heroin.  The undercover

officer then left the area.

4.  On January 24, 2006, at approximately 7:45 p.m., officers with the Metropolitan Police

Department went to the same apartment to execute a search warrant.  However, prior to executing

the warrant, Officer Watts, again acting in an undercover capacity, went to the apartment and

knocked on the door.  On this occasion, Mr. Sweet opened the door.  The undercover officer stated

"what's up?, let me get six."  Mr. Sweet then took $55 in pre-recorded funds from the undercover

officer and went back into the apartment. Mr. Sweet returned a short time later with a ziplock bag

that contained several smaller ziplock bags.  Each of the smaller ziplocks contained a white rocklike

substance.  Mr. Sweet then poured six ziplock bags into the hands of the undercover officer, placed the remaining ziplocks bags in his pocket, and then went back into the apartment.  The white rocklike substance later field-tested positive for cocaine.  The undercover officer then left the area.

5.  Approximately ten minutes later, officers with the Metropolitan Police Department knocked on the door and executed the search warrant.  When the door was not opened and the police waited a reasonable time, the police had to breach the door.  Sergeant Sloan knocked loudly on the door and stated "Police, we have a warrant.  Open the door."  Sergeant Sloan then repeated this process.  At the end of the second set of knocking and announcing, noises coming from inside of the apartment.  The noise was like that of people running away from the door.  There was never any statement from inside indicating that they were going to open the door.  Sergeant Sloan wanted five seconds and, when there was no response from inside, gave the instruction to breach the door.  In addition, the officers at the front door of the apartment were advised by officers in the rear of the building that people were jumping out of the back window.  Apartment 101 is a one bedroom apartment.  There were a total of eight people in the apartment.

6.  Upon entering the apartment, the police observed, the defendant, Mr. Wilson, and Mr. Kinard, running into the bedroom.  After the scene was secured, the police recovered 24 ziplocks of cocaine, one box of .357 ammunition, and one 380 Davis Industries semi-automatic pistol, loaded with seven rounds, from the window area of the same bedroom.

7.  When the police entered the apartment, Sergeant Curtis Sloan observed Mr. Patrick standing over the toilet bowl in the bathroom as it was flushing.  Sergeant Sloan immediately went to the bathroom and observed an identification card and two plastic bags with a white rock-like substance in the toilet.  Sergeant Sloan immediately retrieved the identification card and the bags

from the toilet bowl.  The identification card in the toilet bowl belonged to Mr. Sweet.

8.  Mr. Sweet was attempting to conceal himself behind the bathroom door when Sergeant Sloan entered the bathroom.  Sergeant Sloan observed a plastic ziplock bag with an apple at Mr. Sweet's feet that contained thirty-five smaller ziplocks of a white rocklike substance that later field-tested positive for cocaine.  The police recovered $226 from Mr. Sweet's person in a search incident to arrest.  Of that amount, there was $55 in Metropolitan Police Department funds.  As Sergeant Sloan was patting down Mr. Sweet and Mr. Patrick for the officers' safety, Mr. Sweet spontaneously stated to Sergeant Sloan "Sir, can you get my ID?  It is in the toilet."  Sergeant Sloan indicated that he would retrieve the identification card.  Mr. Sweet repeated this statement a moment later as Sergeant Sloan was waiting for the apartment to be secured.

9.  In searching Mr. Patrick incident to his arrest, the police recovered six ziplocks of cocaine base from his right front pants pocket, $122 from his right rear pants pocket, and $24 in a wallet in his left rear pants pocket.

10.  In addition to the items mentioned heretofore in this opposition, the police went on to conduct a search of the entire apartment and recovered the following:

> (a) One pound of marijuana and a 9mm Sig Sauer semi-automatic loaded with seven rounds, and a bag of ammunition from the kitchen area cabinet;
>
> (b) On a chair in the living room there was a black jacket containing 3 identification cards, including one belonging to Mr. Wilson and one .22 caliber Phoenix Arms semi-automatic pistol loaded with eight rounds;
>
> (c) Eighteen ecstasy pills, seventy-five ziplocks of crack cocaine, and sixty-six ziplocks of marijuana, and ziplock of unused bag from the living room table;
>
> (d) Several cell phones from the living room table;
>
> (e) A white pill bottle and a black box containing PCP from the freezer;

(f) Clear bag and loose bag containing marijuana in the hallway leading to the living room;

(g) Clear bag of unused ziplocks on bathroom floor;

(h) A digital scale in the hallway closet and one in the kitchen cabinet;

(i) Door locks and keys;

(j) A 9mm handgun from along side of 3650 Minnesota Avenue.

(k) Mail matter belonging to Mr. Wilson from the bedroom; and a

(l) a Northface black coat.

The rocklike substances found through the apartment and on the various occupants were determined to be cocaine base.

11.  The evidence will show that Mr. Wilson, while not a legal lessee, was in control of and occupied the apartment.

## ARGUMENT

The Motion to Suppress Should be
Denied Because Rule 41 was Not Violated
and/or Because the Defendant Was Not Prejudiced

12.  The Motion to Suppress contends that Rule 41 of the Federal Rules of Criminal Procedure was violated when (1) the police did not prepare an inventory of the property seized from the apartment in the presence of the defendant, and (2) failed to provide the defendant with a copy of the inventory.  Both are arguments are misplaced and should be rejected.

13.  Rule 41(f)(2) of the Criminal Rules of Criminal Procedure provides, in pertinent part, that

> [a]n officer present during the execution of the warrant must prepare and verify an inventory of any property seized.  The officer must do

> so in the presence of another officer and the person from whom, or
> from whose premises, the property was taken.  If either one is not
> present, the officer must prepare and verify the inventory in the
> presence of at least one other credible person.

The rule goes on provide in subparagraph (f)(3), that the officer executing the warrant must (A) give a copy of the warrant and a receipt for the property taken to from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property."  A review of the record here confirms that the police complied with Rule 41 of the Federal Rules of Criminal Procedure.

14.   Detective Lavinia A. Quigley of the Metropolitan Police Department prepared an inventory of the items taken from Apartment 101.  This inventory was prepared in the presence of at least four other officers with the Metropolitan Police Department.  A copy of the inventory is attached hereto as Exhibit 1.  Moreover, the inventory was prepared in the presence of Curtis Wilson while he was still present in Apartment 101.  Therefore, Detective Quigley complied with Rule 41(f)(2).

15.   Moreover, after preparing the inventory, Detective Quigley presented a copy of the inventory to Mr. Wilson.  However, Mr. Wilson claimed that he was not the lessee of the apartment and refused to signed the receipt.  Accordingly, Detective Quigley left a copy of the receipt in the apartment.  Therefore, Detective Quigley complied with Rule 41(f)(3) and the motion to suppress should be denied.

16.  Even assuming, _arguendo_, that the police had failed to comply with the provisions cited by the defendant, such ministerial, technical violations do not warrant suppression.  Despite what is stated in the motion, the defendant's reliance on United States v. Gantt, 194 F.3d 987 (9th Cir.

1999) is misplaced.  First, under the former version of Rule 41, the police were required to provide a copy of the warrant prior to searching.  In Gantt, the police willfully failed to provide the warrant to the defendant until after the search had been completed and the defendant removed from the scene.  Thus, the case is distinguishable on the facts and the language of the applicable rule. Moreover, Gantt is now viewed to be of limited value in the Ninth Circuit.  See e.g. United States v. Mann, 389 F.3d 869 (9th Cir. 2004)(discussing case law that has limited Gantt).

17.  In addition, the case law now makes it clear that, absent a constitutional violation, a mere technical or ministerial violation does not warrant suppression.  United States v. Gerald, 5 F.3d 563, 566-67 (D.C. Cir. 1993)(evidence not suppressed though officers returned warrant five months after search because prejudice not shown); United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000) (evidence not suppressed even though police failed to leave a copy of the warrant or a receipt); In re search of Office of Tylman, 245 F.3d 978, 981 (7th Cir. 2001)(evidence not suppressed even if Rule 41(d) [now Rule 41(f)] violated.).  In sum, the ministerial procedures set forth in the Motion to Suppress do not warrant suppression.

The Motion to Suppress Should Be Denied<br>
Because the Police Did Not Violate<br>
The Knock and Announce Requirements

18.  The Motion to Suppress also includes a bald assertion that the police violated the "knock and announce" provisions of 18 U.S.C. § 3109.  This assertion must be rejected and the motion denied because the police knocked on the front door of Apartment 101, announced their identity and intent, and began to hear noises from inside of the apartment that sounded like people running away from the door.  The police at the front door were then advised that people were attempting to escape from the rear window of the apartment.  Believing that they were being denied entry, the police then

breached the door.

19.  The defendant's argument that the police violated § 3109 is simply wrong.  The statute

provides, in pertinent part, that

> [t]he officer may break open any outer door or inner door or window
> of a house, or anything therein, to execute a search warrant, if, after
> notice of his authority and purpose, he is refused admittance . . . .

Thus, the statute plainly provides for a breach entry if the police are refused entry.  Here, the police

were denied entry.

20.  The term "refused admittance" is not limited to an affirmative refusal.  United States v.

Bonner, 874 F.2d 822, 824 (D.C. Cir. 1989).  It also includes circumstances that constitutes

constructive or reasonably inferred refusal.  Id.  See also United States v. James, 528 F.2d 999, 1017

(5th Cir.) ("Failure to respond within a reasonable time was tantamount to a refusal.  A reasonable

time is ordinarily very brief."), cert. denied, 429 U.S. 959 (1976).  Court will employ a contextual

analysis, examining all of the circumstances of the case, in determining whether the police were

constructive refused admittance.  Id..  Here, the police were constructively denied entry into

Apartment 101 when the occupants did not open the door.

21.  The police were aware, at the time they attempted to executed the warrant at

approximately 7:55 p.m., that Apartment 101 had been the location of at least two undercover drug

transactions.  The police were also aware that the apartment was occupied as they approached the

door. Sergeant Sloan twice knocked on the door and announced the presence of the police and their

purpose.  Nonetheless, there was no answer from within.  However, the police did hear the sound

of people running away from the door coming from  inside and the officers were advised by officers

stationed at the back of the building that people were attempting to escape through the rear window

of the apartment.  As they waited, they were given no indication from the occupants of the apartment that they were about to be given access.

22.  Finally, even if the Court determines that the police were not constructively denied admittance, the Motion to Suppress should be denied because there were exigent circumstances that evidence was or may be destroyed as the police waited outside.  See United States v. Bonner, supra. In light of all of the circumstances surrounding the police conduct on January 24, 2006, there was reason to believe that evidence could be destroyed and that entry was appropriate without further waiting.

## CONCLUSION

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the Motion to Suppress in its entirety.

Respectfully,
KENNETH L. WAINSTEIN
United States Attorney


By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a true and correct copy of the foregoing United States' Opposition to Defendant's Motion to Suppress was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 26th day of April, 2006, upon:

Joanne Vasco
4102 Madison Street
Hyattsville, Maryland 20781

Tony Axam, Jr.
Assistant Federal Public Defender
625 Indian Avenue, N.W., Suite 550
Washington, D.C. 20004

James L. Lyons
Kellogg, Williams & Lyons
1925 K Street, N.W., Suite 200
Washington, D.C. 20006

Diane Lepley
400 Seventh Street, N.W.
Suite 400
Washington, D.CD. 20004


_____
MICHAEL T. TRUSCOTT